# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JAMES BULL, on behalf of himself and others similarly situated, | ) ) ) ) Case No. 1:14-cv-05789 |
| Plaintiff, | ) ) Judge Rebecca R. Pallmeyer |
| v. | ) ) Magistrate Judge Daniel G. Martin |
| US COACHWAYS, INC., | ) ) |
| Defendant. | ) |

**PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM
IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

# TABLE OF CONTENTS

                                                   **Page(s)**

I. INTRODUCTION .................................................................................................................... 1

II. NATURE OF THE CASE ....................................................................................................... 2

III. THE COURT'S PRELIMINARY APPROVAL ORDER...................................................... 5

IV. FINAL APPROVAL SHOULD BE GRANTED. .................................................................. 5

      A. The Settlement Is the Result of Informed, Arm's-Length Negotiations................. 6

      B. Settlement Class Members Received the Best Notice Practicable. ........................ 7

      C. The Settlement Satisfies the Criteria for Final Approval......................................... 8

            1. The Strength of Plaintiff' Case Compared to the Amount of the Settlement. .................................................................................................. 8

            2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation........................................................................................................ 10

            3. Lack of Opposition to the Settlement ......................................................... 11

            4. The Opinion of Counsel............................................................................... 12

            5. The Extent of Discovery Completed and the Stage of the Proceedings ................................................................................................. 12

V. CONCLUSION....................................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Armstrong v. Bd. of Sch. Directors of City of Milwaukee*,
   616 F.2d 305 (7th Cir. 1980) ................................................................................................8

*In re AT&T Mobility Wireless Data Servs. Sales Litig.*,
   270 F.R.D. 350 (N.D. Ill. 2010)............................................................................................12

*Balschmiter v. TD Auto Fin. LLC*,
   303 F.R.D. 508 (E.D. Wis. 2014) .........................................................................................10

*Bridgeview Health Care Ctr. Ltd. v. Clark*,
   No. 09-5601, 2011 WL 4628744 (N.D. Ill. Sept. 30, 2011) .................................................10

*Edeh v. Midland Credit Mgmt., Inc.*,
   748 F. Supp. 2d 1030 (D. Minn. 2010) ..................................................................................3

*Eubank v. Pella Corp.*,
   753 F.3d 718 (7th Cir. 2014) ................................................................................................11

*Franklin v. Wells Fargo Bank, N.A.*,
   No. 14CV2349-MMA (BGS), 2016 WL 402249 (S.D. Cal. Jan. 29, 2016) ...........................2

*Isby v. Bayh*,
   75 F.3d 1191 (7th Cir. 1996) .......................................................................................5, 8, 12

*In re Jiffy Lube International, Inc. Text Spam Litigation*,
   Civil Action No. 11-md-02261 (S.D. Cal. Feb. 20, 2013) .....................................................4

*Kolinek v. Walgreen Co.*,
   2014 U.S. Dist. LEXIS 91554 (N.D. Ill. July 7, 2014) ..........................................................4

*Mangone v. First USA Bank*,
   206 F.R.D. 222 (S.D. Ill. 2001) ............................................................................................11

*In re Mexico Money Transfer Litig.*,
   164 F. Supp. 2d 1002 (N.D. Ill. 2000) ............................................................................10, 12

*Schulte v. Fifth Third Bank*,
   805 F. Supp. 2d 560 (N.D. Ill. 2011) ...................................................................................11

*Spokeo, Inc. v. Robins*.
   578 U.S. ___, 136 S. Ct. 1540 (2016)..................................................................................10

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
    463 F.3d 646 (7th Cir. 2006) ...................................................................................8

*Thrasher-Lyon v. CCS Commercial, LLC*,
    No. 11-cv-04473, 2012 WL 3835089 (N.D. Ill. 2012) ................................................3

*Uhl v. Thoroughbred Tech. & Telecomms., Inc.*,
    309 F.3d 978 (7th Cir. 2009) ...................................................................................6

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ...................................................................................7

**Regulatory Cases**

*In the Matter of Rules and Regulations Implementing the Telephone Consumer
    Protection Act of 1991*,
    27 F.C.C.R. 1830 ....................................................................................................3

**Statutes**

28 U.S.C. § 1715(a)(2)..........................................................................................................2, 8

47 U.S.C. § 227 ............................................................................................................. *passim*

47 U.S.C. § 227(b)(1)(A)(iii).....................................................................................................3

47 U.S.C. § 227(b)(3), §227(c)(5) ...........................................................................................1

**Rules**

Fed. R. Civ. P. 23.............................................................................................................1, 5, 8

Fed. R. Civ. P. 23(b)(3)............................................................................................................9

**Regulations**

47 C.F.R. § 64.1200(a)(1)(iii)...................................................................................................1

47 C.F.R. § 64.1200(c)(2) .......................................................................................................1

**Other Authorities**

H. Newberg & A. Conte, *Newberg on Class Actions* (4th ed. 2002).............................................6

Manual for Complex Litigation (Fourth) (2010) ........................................................................6

# I. INTRODUCTION[1]

This case involves alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, which prohibits, *inter alia*, initiating any text messages to a telephone number registered with the National Do Not Call Registry, or sending cellular telephone text messages using an automatic telephone dialing system ("ATDS") or an artificial or prerecorded voice. *See* 47 U.S.C. § 227(b)(3), §227(c)(5); 47 C.F.R. § 64.1200(c)(2); § 64.1200(a)(1)(iii).

After over a year of litigation, discovery, and numerous arm's-length negotiations between counsel, Plaintiff James Bull and Defendant US Coachways, Inc. ("US Coachways") reached a class action settlement ("Settlement"), which this Court preliminarily approved on March 17, 2016 (Dkt. 76)[2]. The Settlement establishes a Consent Judgment in the amount of $49,932,375, with US Coachways assigning its rights against Illinois Union, its insurance company, which failed to provide coverage. In its opinion preliminarily approving the Settlement, the Court found that the Settlement met all the requirements of Rule 23 of the Federal Rules of Civil Procedure and deserved preliminary approval. *See* Dkt. No. 76 and 84.

Now, following compliance with the notice regime submitted by the parties and ordered by this Court, including direct notice to the class as well as internet publication, the parties request that the Court grant final approval of the Settlement. Significantly, Settlement Class Members did not need to take any steps to receive their payment, which will be mailed to the same address at which they received notice or to any updated address submitted to the third party administrator during the notice process, if any funds are recovered from an insurance action,

---

[1] All capitalized terms not defined herein have the meanings set forth in the Parties' Class Action Settlement Agreement ("Agr."), previously submitted to this Court.

[2] A revised Preliminary Approval Order was entered on August 4, 2016. *See* Dkt. No. 84.

which the Plaintiff will be filing when a final judgment is entered. The process is therefore different than other TCPA settlements that have been approved where class members must submit a claim form in order to recover. *See e.g. Franklin v. Wells Fargo Bank, N.A.*, No. 14CV2349-MMA (BGS), 2016 WL 402249, at *2 (S.D. Cal. Jan. 29, 2016) ("Payments from the Settlement Fund are in the form of a pro rata Settlement Check, which will be mailed to each of the Class Members who made a valid and approved claim."). Perhaps as a result of this method, which is designed to maximize participation, the response from the Settlement Class has been overwhelmingly positive. In fact, there were *no objections* to any aspect of the settlement agreement by class members or by any government entity that received notice pursuant to the Class Action Fairness Act of 2005. *See* 28 U.S.C. § 1715(a)(2).

For the reasons set forth herein and in the extensive papers previously submitted, the Settlement is fair, adequate, and reasonable, and is in the best interests of the Settlement Class. Accordingly, Plaintiff respectfully requests that the Court grant final approval of the Settlement by entering the proposed Final Approval Order attached hereto as Exhibit 1.

## II. NATURE OF THE CASE

US Coachways is motor coach short term leasing company. In order to drive repeat business and secure new business, US Coachways began sending blast text messages in 2011 to individuals who had booked past trips as well as and individuals who had asked for quotes over the telephone, but decided to not book trips. In order to do this, US Coachways used a marketing platform, Gold Mobile. The Gold Mobile marketing platform allows customers to load lists of cellular telephone numbers and design the content of a text message that is then automatically sent to the entire list.

The amount of text messages sent in this matter is staggering. An example of the privacy invasions caused by this marketing is indicated in the Plaintiff's own experience with US Coachways. Over the course of three years, the Plaintiff received more than 20 unsolicited text message advertisements. This type of marketing, along with e-mail solicitations, are the two largest forms of marketing engaged in by US Coachways. As their CEO commented in a June 2014 e-mail, "Every month we do an email blast to almost 300,000 customers and text blast to almost 90,000 customers." *See* Exhibit 2, Declaration of Edward A. Broderick ("*Broderick Decl.*") at ¶ 12.

The TCPA places restrictions on computer-generated telemarketing calls to cell phones. The general rule is that no person may make a call to a cellular telephone using an automatic telephone dialing system, period. 47 U.S.C. § 227(b)(1)(A)(iii). There is an affirmative defense available if the caller can show that it had the "prior express consent" of the call recipient to receive the call. *Id*. "Prior express consent" exists where a consumer has (a) clearly stated that the telemarketer may call, and (b) clearly expressed an understanding that the telemarketer's subsequent call will be made for the purpose of encouraging the purchase of goods or services. *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 27 F.C.C.R. 1830 ¶ 7 (FCC 2012).

Courts have explained that "prior express consent" means that a caller is "not permitted to make an automated call to [an individual's] cell phone unless [that individual] had previously said to [the caller]…something like…: 'I give you permission to use an automatic telephone dialing system to call my cellular phone." *Edeh v. Midland Credit Mgmt., Inc.,* 748 F. Supp. 2d 1030, 1038 (D. Minn. 2010) aff'd, 413 F. App'x 925 (8th Cir. 2011); *Thrasher-Lyon v. CCS Commercial, LLC*, No. 11-cv-04473, 2012 WL 3835089, at *3 (N.D. Ill. 2012). Courts in this

3

District have interpreted this Order consistent with protecting the privacy rights of call recipients. In *Kolinek v. Walgreen Co.*, 2014 U.S. Dist. LEXIS 91554 (N.D. Ill. July 7, 2014), Judge Kennelly held:

> The FCC has established no general rule that if a consumer gives his cellular phone number to a business, she has in effect given permission to be called at that number for any reason at all, absent instructions to the contrary. Rather, to the extent the FCC's orders establish a rule, it is that the scope of a consumer's consent depends on its context and the purpose for which it is given. Consent for one purpose does not equate to consent for all purposes.
>
> This, in the Court's view, is a more natural reading of the TCPA's exception for a call "made with the prior consent of the called party."

*Id.* at *10-11. Here, US Coachways has failed to obtain the requisite consent to send these individuals the text messages. In fact, US Coachways, after being compelled in this case, confirmed that it did not have any evidence of consent to send the text messages at issue. *Broderick Decl.* at ¶ 12.

Grafting phone numbers from prior customers and sending them illegal text messages is a common tactic, but one which clearly violates the TCPA. In 2012, a Jiffy Lube franchisee agreed to pay $47,000,000 to resolve a text message marketing suit after it took cellular telephone numbers from old invoices and the customer database at a number of its Jiffy Lube locations. *See In re Jiffy Lube International, Inc. Text Spam Litigation*, United States District Court for the Southern District of California, Civil Action No. 11-md-02261 (final approval granted on February 20, 2013). Here, US Coachways' violation of the law was not limited to interactions with prior customers, but also to individuals, such as the Plaintiff, who had never actually entered into a transaction with US Coachways, but merely obtained a quote.

The TCPA creates a private cause of "action to receive $500 in damages for each such violation." *See* 47 U.S.C. § 227. Here, Plaintiff's expert Jeffrey Hansen has provided the

4

following analysis of ATDS generated text messages sent by US Coachways to members of the proposed class.

>Total messages sent between '2011-11-09' and '2012-11-08': 205,564
>Total messages sent between '2012-11-09' and '2013-11-08': 89,344
>Total messages sent between '2013-11-09' and '2014-11-08': 96,551

Mr. Hansen's analysis identified 391,459 violative text messages, as US Coachways has not provided any evidence of prior express consent to place the ATDS texts to cell phones, yielding exposure for US Coachways of $195,729,500. *Broderick Decl.* at ¶ 13. In the face of this level of exposure, given US Coachways' inability to satisfy a judgment, Plaintiff and his counsel submit that a consent judgment leaving the class to pursue recovery against Illinois Union is the only economically rational choice for the proposed class. *Broderick Decl.* at ¶ 19.

### III. THE COURT'S PRELIMINARY APPROVAL ORDER

On March 17, 2016, this Court entered a preliminary approval Order. *See* Dkt. No. 76 and 84. In that opinion, the Court found that the Settlement met all the requirements of Rule 23 of the Federal Rules of Civil Procedure and deserved preliminary approval. *Id*. The Court further held:

> Individually litigating each class member's claims would be expensive, time consuming, and redundant, especially considering the very similar nature and small size of each member's claim. There is no indication that any of the class members have other litigation relating to the issues in this case. Consolidating the many small claims into one class action is efficient and far superior to separately litigating the claims of several thousand class members.

Dkt. No. 76 at 6.

### IV. FINAL APPROVAL SHOULD BE GRANTED.

"Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) (citing *E.E.O.C. v. Hiram Walker & Sons, Inc.*, 768 F.2d 884, 888–89 (7th Cir. 1985)). When faced with a motion for final approval of a class action settlement under Rule 23, a court's inquiry is limited to whether the settlement is "lawful, fair, reasonable,

5

and adequate." *Uhl v. Thoroughbred Tech. & Telecomms., Inc.*, 309 F.3d 978, 986 (7th Cir. 2009). A settlement is fair, adequate, and reasonable, and merits final approval, when "the interests of the class as a whole are better served by the settlement than by further litigation." Manual for Complex Litigation (Fourth) § 21.61, at 480 (2010).

### A. The Settlement Is the Result of Informed, Arm's-Length Negotiations.

A proposed class settlement is presumptively fair where it "is the product of arm's length negotiations, sufficient discovery has been taken to allow the parties and the court to act intelligently, and counsel involved are competent and experienced." H. Newberg & A. Conte, *Newberg on Class Actions* § 11:41 (4th ed. 2002). The Settlement satisfies this test.

To reach this Settlement, Plaintiff and his counsel thoroughly investigated the facts and law underlying the claims asserted in this action, and engaged in comprehensive discovery. *See Broderick Decl.* at ¶¶ 10-19. Plaintiff requested and US Coachways produced data and documents regarding the claims of Plaintiff and the class. Plaintiff served a subpoena to Gold Mobile, and litigated a separate discovery action in the United States District Court for the District of New Jersey, *Gold Group Enterprises, Inc. d/b/a Gold Mobile v. James Bull*, Civil Action No. 2:14-cv-07410, over the enforcement of that subpoena. That discovery action yielded production of the business records of Gold Mobile, including the records of texting that Plaintiff used to identify the members of the proposed class. *Broderick Decl.* at ¶ 11. This information permitted Plaintiff to effectively negotiate on behalf of the Settlement Class, and ultimately achieve the Settlement for which approval is now sought: a Consent Judgment in the amount of $49,932,375 from which each Settlement Class Member will receive a *pro rata* share if any monies are recovered from the insurance company, after payment of Class Counsel's fees and costs, and any approved service award to Plaintiff for serving as representatives of the Settlement Class. Because the Settlement is the result of extensive, arm's-length negotiations between

experienced and well-informed counsel, with the assistance of an experienced mediator, in the total absence of collusion, and represents a fair result, the Settlement is entitled to approval. *Wong v. Accretive Health, Inc.,* 773 F.3d 859, 864 (7th Cir. 2014).

### B. Settlement Class Members Received the Best Notice Practicable.

This Court has already determined that the notice plan in this case meets the requirements of due process and applicable law, provides the best notice practicable under the circumstances, and constitutes due and sufficient notice to all individuals entitled thereto. *See* Dkt. No. 76 and 84. This notice plan has been fully implemented by independent Class Administrator, Kurtzman Carson Consultants LLC ("KCC"). *See* Exhibit 3, Declaration of Scott DiCarlo of KCC ("*DiCarlo Decl.*").

Using the class records obtained by Plaintiff through discovery and in coordination with Defendant, KCC executed the notice plan in the form previously approved by this Court by sending an email to 15,165 email addresses and a postcard mailing to 70,690 postal addresses. *Id.* ¶ 3. As a supplement to direct notice, the Class Administrator also created a settlement website, www.CoachwaysTCPASettlement.com, from which Settlement Class Members could obtain the Court-approved notice of the Settlement, a copy of the Agreement, as well as the Court's Order Granting Motion for Preliminary Approval of Settlement, and other information relevant to the Settlement. *Id.*

The Court-approved notice provided to the Settlement Class informed them of, among other things: (1) information about the Action, the Settlement, and the release; (2) deadlines for Settlement Class Members to opt out of the Settlement, or object to the Settlement; (3) the date and location of the final approval hearing; and (4) Settlement Class Members were informed that they did not need to take *any steps* in order to receive a settlement payment as part of this settlement agreement at this time. *Id.* at ¶ 4. Finally, US Coachways used KCC to provide notice

7

of the Settlement to all appropriate federal and state officials, pursuant to the Class Action Fairness Act of 2005, *see* 28 U.S.C. § 1715(a)(2). *Id*. at ¶ 2.

The notice plan approved by this Court and implemented by KCC has successfully provided notice of these proceedings and of the matters set forth therein, including the Agreement, to all parties entitled to such notice, and satisfied the requirements of Fed. R. Civ. P. 23 and due process.

### C. The Settlement Satisfies the Criteria for Final Approval.

In assessing the fairness, reasonableness, and adequacy of a settlement, courts view the facts in the light most favorable to the settlement. *Isby*, 75 F.3d at 1199. The Court "should not substitute [its] own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Armstrong v. Bd. of Sch. Directors of City of Milwaukee*, 616 F.2d 305, 315 (7th Cir. 1980), *overruled on other grounds by Felzen v. Andreas*, 134 F.3d 873 (7th Cir. 1998).

In evaluating fairness, a court should consider: "(1) the strength of the case for Plaintiff on the merits, balanced against the amount offered in settlement; (2) the complexity, length and expense of the litigation; (3) the amount of opposition to the settlement by affected parties; (4) the opinion of competent counsel; and (5) the amount of discovery completed at the time of settlement." *Isby*, 75 F.3d at 1199. Of these considerations, the first is most important. *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006). Applied to this case, the relevant criteria support final approval of the Settlement.

#### 1. *The Strength of Plaintiff' Case Compared to the Amount of the Settlement.*

Discovery in the action, along with a report prepared by Plaintiff's expert witness Jeffrey Hansen, revealed that as part of its marketing of its charter bus services, US Coachways sent text messages without the prior express consent of the recipients promoting its services. Mr. Hansen's

8

analysis identified 391,459 violative text messages. However, US Coachways' financial documentation shows that they have nowhere close to the kind of money that could satisfy a judgment or fund a settlement consistent with that exposure.

Prior to its marketing efforts, US Coachways obtained an insurance policy from Illinois Union Insurance Company which the parties believe provides insurance coverage for the claims set forth in this action. During this litigation, US Coachways twice tendered the claim to Illinois Union, and Plaintiff's counsel twice demanded that Illinois Union participate in this action, and also invited them to participate in settlement discussions. In spite of this massive exposure, and plain coverage for the claims at issue, Illinois Union declined coverage and refused to provide US Coachways with a defense, and even misstated the terms of its insurance policy in attempting to justify its denial.

Given Illinois Union's recalcitrance, Plaintiff's counsel engaged in settlement discussions with counsel for US Coachways without Illinois Union's participation. The negotiations resulted in the proposed Settlement under which US Coachways assigns its rights against Illinois Union to Plaintiff and the class, and agrees to entry of a consent judgment for $49,932,375 enforceable only against Illinois Union, with US Coachways contributing $50,000 which was applied toward the cost of notice. Plaintiff and his counsel will next pursue an action against Illinois Union seeking to collect on that judgment. In the event of recovery, the funds from such an action will be deposited into a Settlement Fund, with distributions from the Settlement Fund to be approved by this Court. Plaintiff respectfully submits that given that US Coachways has limited financial resources, this Settlement represents the best opportunity for the class to obtain a recovery, and meets all of the requirements for the Court's approval under Rule 23(b)(3).

## 2. The Risk, Expense, Complexity, and Likely Duration of Further Litigation

Final approval of a settlement is favored where "continued litigation would require resolution of complex issues at considerable expense and would absorb many days of trial time." *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000) (citing *Isby*, 75 F.3d at 1199). Throughout the negotiation process, US Coachways vigorously defended its position and expressed every intention of continuing a spirited defense, absent a settlement, through class certification and trial. Class Counsel have a significant amount of experience in consumer class action litigation and know that any case involving a nationwide class can, and often does, lead to costly litigation that goes on for years. Although Plaintiff has thoroughly investigated the factual and legal bases for his claims and has developed substantial evidence supporting his allegations that US Coachways violated the TCPA, one cannot ignore the presence of significant risks in continuing the litigation had settlement not occurred.

Continued litigation, for example, runs the risk that this Court or the Seventh Circuit would refuse to certify the class. For example, individualized issues may predominate relating to the issues of consent. In addition, US Coachways may argue that Plaintiff would need to prove that all putative class members have Article III standing, by specifically showing both a "concrete and particularized" injury, based on the Supreme Court's decision in *Spokeo, Inc. v. Robins*. 578 U.S. ___, 136 S. Ct. 1540, 1546 (2016).

Plaintiff cannot discount the possibility that an opposition to class certification based on these arguments would have been successful. *Compare, e.g., Bridgeview Health Care Ctr. Ltd. v. Clark*, No. 09-5601, 2011 WL 4628744, at *5 (N.D. Ill. Sept. 30, 2011) (granting class certification), with *Balschmiter v. TD Auto Fin. LLC*, 303 F.R.D. 508 (E.D. Wis. 2014) (denying class certification). If US Coachways was able to present convincing facts to support its

positions, then the Court could have possibly refused to certify the class, leaving Plaintiff to only pursue his individual claims. Instead, "[s]ettlement allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) (citation omitted).

Beyond certification issues, there is also a substantial risk of losing inherent in any jury trial. It is also possible that, despite an ultimate finding in favor of Plaintiff, the Court would significantly reduce the amount of a class-wide judgment based on due process grounds. And even if Plaintiff prevailed at trial, Defendant would almost certainly appeal, threatening a reversal of any favorable outcome and causing significant delays in obtaining any relief for class members.

Given the significant risks of continued litigation—in addition to the extended costs and time needed to proceed with discovery and brief adversarial motions on class certification and summary judgment (let alone prepare for trial)—the risk, expense, complexity, and likely duration of further litigation support approval of the Settlement.

### 3. *Lack of Opposition to the Settlement*

Class Counsel believes that due to the approach that required no action on behalf of Settlement Class Members to receive a payment, there has been an overwhelmingly positive response to the Settlement, which includes *no* requests for an exclusion and *no objections* out of a total Settlement Class of more than 85,000 persons. *DiCarlo Decl.* at ¶ 4-5. The lack of opposition to the Settlement favors approval. *Compare Eubank v. Pella Corp.*, 753 F.3d 718, 726 (7th Cir. 2014) (finding that class counsel had "sold out the class" and that, "[c]onsidering the modesty of the settlement, the length and complexity of the forms, and the unfamiliarity of the average homeowner with arbitration, we're not surprised [with the 0.57% claims rate]"). The lack of *any objectors* to the Settlement particularly favors a finding that it is fair and reasonable.

*Mangone v. First USA Bank*, 206 F.R.D. 222, 227 (S.D. Ill. 2001).

### 4. *The Opinion of Counsel*

Where Class Counsel is qualified and well informed, their opinion that a settlement is fair, reasonable, and adequate is entitled to significant weight. *See Isby*, 75 F.3d at 1200; *In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d at 1020 (placing "significant weight on the unanimously strong endorsement of these settlements" by "well-respected attorneys"). Here, Class Counsel's—with substantial experience in consumer and class action litigation, including under the TCPA—opinion is that the Settlement is in the best interest of the Settlement Class as a whole. Submitted contemporaneously herewith is the Declaration of Edward A. Broderick attesting that the Settlement is fair, reasonable and an adequate recovery for the Class. *Broderick Decl.* at ¶¶ 10-19.

### 5. *The Extent of Discovery Completed and the Stage of the Proceedings*

Courts regularly approve settlements achieved "where counsel have conducted a significant amount of informal discovery and dedicated a significant amount of time and resources to advancing the underlying lawsuits." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 350, 350 (N.D. Ill. 2010) (internal quotations omitted)). As explained above, this Settlement was only reached after over a year of litigation and discovery had occurred. The fact that the Settlement was achieved through negotiations by well-informed, experienced counsel favors approval.

## V. CONCLUSION

The Settlement is fair, adequate, and reasonable, providing substantial benefits to the Settlement Class. This is an outstanding result in light of the recoveries potentially available under the law and the risks of continued litigation, and Plaintiff respectfully request that the Court approve the Settlement in its entirety.

Dated: October 27, 2016

Respectfully submitted,

PLAINTIFF JAMES BULL individually and on behalf of a class of all persons and entities similarly situated,
By his attorneys,

/s/ *Brian K. Murphy*
Brian K. Murphy
Murray Murphy Moul Basil LLP
1114 Dublin Rd.
Columbus, OH 43215
murphy@mmmb.com
Tel: (614) 488-0400

Edward A. Broderick
Anthony Paronich
Broderick Law, P.C.
99 High St., Suite 304
Boston, MA 02110
Tel: (617) 738-7080
ted@broderick-law.com
anthony@broderick-law.com

Lauren E. Snyder
1350 N. Wells Street, Apt. A214
Chicago, IL 60610
Tel: (419) 344-1146
lauren.elizabeth.snyder@gmail.com

Matthew P. McCue
The Law Office of Matthew P. McCue,
1 South Ave., Third Floor
Natick, MA 01760
Tel: (508) 655-1415
mmccue@massattorneys.net

*Attorneys for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on October 27, 2016, I electronically filed the foregoing with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/ *Brian K. Murphy*
Brian K. Murphy
